UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

SHANNON CASEY,

                                    Plaintiff,        DECISION and ORDER

-vs-
                                                          17-CV-6768 CJS

PITTSFORD CENTRAL SCHOOL DISTRICT,
BOARD OF EDUCATION FOR THE PITTSFORD
CENTRAL SCHOOL DISTRICT, KATHY HERRICK,
MICHAEL LEONE, BOB CHANTRA,

                                   Defendants.
_____

APPEARANCES

For Plaintiff:        Ryan C. Woodworth
                           The Woodworth Law Firm
                           16 West Main Street, Suite 732
                           Rochester, New York 14614

For Defendants:    Heather Dechert
                           Webster Szanyi, LLP
                           424 Main Street, Suite 1400
                           Buffalo, New York 14202

INTRODUCTION

Shannon Casey ("Plaintiff") commenced this action after she was fired from her job as a "bus attendant" for the Pittsford Central School District. Now before the Court is the Defendants' motion (Docket No. [#5]) to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The application is denied.

BACKGROUND

The following facts are taken from Plaintiff's Complaint [#1] and are presumed to be true for purposes of this Decision and Order. The events relevant to Plaintiff's action occurred between September 2016 and December 2016. At all relevant times Plaintiff was employed as a bus attendant by the Pittsford Central School District ("the District"). At all relevant times the Board of Education for the Pittsford Central School District ("the Board") was "responsible for prescribing and enforcing rules and regulations at [the District]."[1] At all relevant times, defendant Kathy Herrick ("Herrick") was employed as the Director of Transportation for the District, defendant Michael Leone ("Leone") was employed as the Assistant Superintendent of Human Resources for the District and defendant Bob Chantra ("Chantra") was employed as Special Needs Liaison for the District.

On or about September 13, 2016, Plaintiff began her employment with the District. Herrick and Chantra were Plaintiff's direct supervisors. Plaintiff's job required her to monitor and supervise students as they were being transported to and from school on buses operated by a bus driver also employed by the District. In that capacity, on September 26, 2016, Plaintiff was supervising a student, J.C., who swore at her and kicked her twice in her rib cage. The Complaint does not indicate J.C.'s age or indicate that Plaintiff suffered any actual injury from the kicks.[2] Afterward, Plaintiff told Chantra about the incident and that she did not feel comfortable supervising violent children such as J.C.. However, Chantra indicated that he thought Plaintiff could handle

---

[1] Complaint [#1] at ¶ 12.
[2] During oral argument counsel referred to J.C. as being six years of age.

the job and encouraged her to document "every concerning event she experienced or witnessed in a notebook" that he would review each day.[3]  The Complaint alleges that Plaintiff was never trained on how to handle violent students and was not offered the opportunity to transfer to a different bus assignment.

Subsequently, Plaintiff continued to work on the bus that transported J.C., as well as his siblings I.T. and E.S.  During this period the siblings acted violently toward each other, such as by slapping each other's faces, but were not violent toward Plaintiff.  On one occasion, J.C. told Plaintiff that his sister, I.T., had slammed his face into a car door and his head into a wall.  On September 29, 2016, J.C. violently swung a tree branch at three District employees, though it is unclear whether Plaintiff was one of those employees.  The Complaint indicates that Plaintiff documented these incidents in her notebook.

On October 4, 2016, Plaintiff was again assigned to the afternoon bus run that was to transport J.C., I.T. and E.S. from school to their residence.  J.C. and E.S. were on the bus, but the bus had to wait for I.T. to arrive.  Upon I.T.'s arrival, Plaintiff told her that her tardiness had inconvenienced the others on the bus, which caused I.T. to flare her nostrils and clench her fists in anger.  The situation escalated when E.S. announced to I.T. that while they had been waiting for I.T. to board the bus, Plaintiff had been "talking smack and cussing" about I.T., though Plaintiff denies that she did so.  In any event, when the bus arrived at the residence of J.C., I.T. and E.S., the students executed an attack on Plaintiff that they had apparently planned out during the bus ride.

---

[3] Complaint [#1] at ¶ 34.

Specifically, I.T. punched Plaintiff in the face, J.C. repeatedly kicked her and E.S. filmed the incident. (The Complaint also refers to a "surveillance" recording of the incident, which apparently means the bus was equipped with a surveillance camera that captured the incident.) The bus driver blandly told the students to stop attacking Plaintiff but did not leave his seat or otherwise intervene. Plaintiff asked the bus driver to call 911, but he declined to do so.

After the incident, at approximately 3:30 p.m. that day, Plaintiff sent a text message to Chantra stating, "I'm having major issues with [I.T.].[4] She is very confrontational and threatening me!!!! I need to speak with you about it!!!." Oddly, the text apparently did not mention the physical assaults by I.T. or J.C., even though Plaintiff claims to have required treatment at a hospital emergency room following the incident. The Complaint indicates that Chantra took "no action" in response, except to say that he would speak to Plaintiff the next day. The Complaint does not indicate what, if anything, happened the following day.

However, two days later, on October 6, 2016, Plaintiff was interviewed by "a local Rochester, NY radio station discussing various topics regarding the October 4, 2016 incident."[5] The Complaint alleges that during the interview, Plaintiff spoke as a public citizen and not as an employee of the District, and that the interview covered the following topics:

---

[4] The Complaint says "IM," but the Court assumes that is a typographical error, since no one is referred to IM in the Complaint. Complaint [#1] at ¶ 46.
[5] Complaint [#1] at ¶ 48. Although the Complaint does not explain how the interview came about, during oral argument counsel seemed to be in agreement that Plaintiff had called into the radio program, which led to an "on air" discussion, that is, the "interview."

> Freedom of Information Law and the disclosure by [the District] of the assault surveillance tape;
>
> The McKinney-Vento Act and [the District's] transportation of J.C., I.T. and E.S;
>
> [The District's] code of conduct as to the acceptable civil and respectable treatment of teachers, school administrators, and other school personnel;
>
> [The District's] code of conduct as to disciplinary measures to be taken in incidents involving the use of force by students against teachers, school administrators, and other school personnel;
>
> [The District's] code of conduct as to the removal of students from the classroom and from school property who use . . . physical force . . . against teachers, school administrators, and other school personnel; and
>
> [The District's] code of conduct as to detention, suspension and removal of students from the classroom who use . . . physical force against teachers, school administrators, and other school personnel.

Complaint [#1] at ¶ 50.

The day after the interview, October 7, 2016, Plaintiff met with Herrick and Leone. Leone accused Plaintiff of "making false and/or malicious accusations during the radio interview including but not limiting [sic] statements involving one or more of the children involved in the October 4, 2016 incident."[6] Plaintiff responded that Leone's accusation was untrue. Plaintiff also showed Leone the notebook that she had been keeping to document incidents, and Leone took the notebook from her.

Plaintiff, who had apparently stopped working after the incident on October 4th, continued to remain out of work. On or about November 2, 2016, Herrick contacted

---

[6] Complaint [#1] at ¶ 54.

Plaintiff and inquired whether her doctor had cleared her to return to work.

On November 3, 2016, Plaintiff met with Leone, Herrick and a union representative. During the meeting Leone questioned Plaintiff for about an hour concerning the radio interview.

On November 9, 2016, Plaintiff attended another meeting with Leone and Herrick. During the meeting, Leone notified Plaintiff that her employment was being terminated, and provided her with a "termination letter" explaining the decision. The actual letter is not before the Court. However, according to the Complaint the termination letter "informed Plaintiff she was terminated because of certain statements she made on the live radio interview."[7] The Complaint contends, though, that the reasons contained in the termination letter were false, and that Plaintiff was actually terminated in retaliation for her statements about "matters of public concern."[8]

On November 9, 2017, Plaintiff commenced this action. The Complaint purports to assert the following six causes of action: 1) a claim under 42 U.S.C. § 1983 alleging retaliation in violation of Plaintiff's First Amendment rights against Leone and Herrick; 2) a retaliation claim under the New York State Constitution, Article I, § 8, against all defendants except Chantra; 3) a claim under New York law for breach of the special duty to protect, against all defendants except Leone; 4) a claim under New York law for negligent supervision against all defendants except Leone; 5) a claim under New York law for negligent training against all defendants except Leone; and 6) a claim under New York law for intentional infliction of emotional distress ("IIED") against Leone,

---

[7] Complaint [#1] at ¶ 65.
[8] Complaint [#1] at ¶ ¶ 65-66.

Herrick and Chantra. The Complaint demands relief including compensatory and punitive damages.

On January 23, 2018, Defendants filed the subject motion [#5] to dismiss the Complaint pursuant to Rule 12(b)(6). The motion asserts the following arguments: 1) the third, fourth, fifth and sixth causes of action are barred because New York Worker's Compensation Law provides Plaintiff's exclusive remedy for work-related injuries; 2) punitive damages cannot be recovered against the District; 3) the state law claims are barred by the doctrine of Governmental immunity for discretionary acts; and 4) Leone and Herrick are entitled to qualified immunity as to the Section 1983 claim. With regard to the qualified immunity argument, Defendants contend that Plaintiff was fired for making inappropriate comments about students, and it is not clearly established that terminating an employee for that reason would violate the Constitution.

On March 16, 2018, Plaintiff filed a response [#8]. Plaintiff has agreed to voluntarily withdraw the third, fourth and fifth causes of action, but maintains that the sixth cause of action for IIED is not barred by the New York Worker's Compensation Law, apparently on the theory that the District and/or the Board caused or directed Leone, Herrick and Chantra to commit the intentional tort of IIED against Plaintiff. Plaintiff further contends that the second cause of action, alleging retaliation under the New York State Constitution, is not barred by doctrine of governmental immunity for discretionary acts. In that regard, Plaintiff states that the doctrine provides immunity from liability for discretionary acts but not ministerial acts, and that it is not presently clear whether the decision to terminate her employment was a discretionary act or a

7

ministerial act.  Additionally, Plaintiff contends that Leone and Herrick are not entitled to qualified immunity as to the § 1983 retaliation claim, since it was clearly established that public employees cannot be fired for speaking on matters of "public concern" such as "school policies" and "safety in the workplace."  Finally, Plaintiff contends that she is entitled to pursue punitive damages against the individual defendants.

On April 6, 2018, Defendants filed a reply [#9] in which they essentially reiterate the points raised in their initial memorandum of law.

Based on the foregoing submissions, and Plaintiff's decision to withdraw the third, fourth and fifth causes of action, there appear to be three issues for the Court to resolve: First, whether Leone and Herrick are entitled to dismissal of the § 1983 claim as a matter of law based on the affirmative defense of qualified immunity; second, whether Defendants (except Chantra, who is not named in the claim) are entitled to dismissal of the New York retaliation claim as a matter of law based on the doctrine of governmental immunity for discretionary acts; and third, whether Leone, Herrick and Chantra are entitled to dismissal of the IIED claim as a matter of law based on the New York Worker's Compensation Law's exclusivity provision.  There does not appear to be any real dispute over punitive damages, as Defendants assert only that such damages cannot be recovered against the District, and Plaintiff asserts that he is only seeking such damages against the individual defendants.

On November 29, 2018, counsel for the parties appeared before the undersigned for oral argument.

DISCUSSION

Defendants have moved to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and the legal standards applicable to such a motion are clear:

> To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

*Progressive Credit Union v. City of New York*, 889 F.3d 40, 48 (2d Cir. May 1, 2018).

> In its review, the Court is entitled to consider facts alleged in the complaint and documents attached to it or incorporated in it by reference, documents "integral" to the complaint and relied upon in it, and facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

*Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. Jun. 3, 2014) (citations and internal quotation marks omitted).

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007); *see also, ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir.2007) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.' ") (*quoting Bell Atl. Corp. v. Twombly*) (footnote omitted).

When applying this "plausibility standard," the Court is guided by "two working principles":

> First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss, and determining whether a complaint states a plausible claim for relief will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations and internal quotation marks omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 1950 (2009) (citation omitted).

"[A]s *Iqbal* makes clear, a plausible claim must come before discovery, not the other way around." *Angiulo v. Cty. of Westchester*, No. 11-CV-7823 CS, 2012 WL 5278523, at *3 (S.D.N.Y. Oct. 25, 2012) (citation omitted); *see also, McBeth v. Porges*, 171 F. Supp. 3d 216, 236 (S.D.N.Y. 2016) (Observing that pursuant to *Iqbal's* pleading standard, "the Federal Rules of Civil Procedure do 'not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions or speculation.'") (quoting *Iqbal*).\

Qualified Immunity

It is clear that when deciding a Rule 12(b)(6) motion the Court must accept the plausible factual allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir.1999), *cert. den.* 531 U.S. 1052, 121 S.Ct. 657 (2000). It is also clear that an affirmative defense such as qualified immunity may be granted under Rule 12(b)(6) only "if the defense appears on the face of the

complaint." *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998) (emphasis added). Because of these principles,

> [i]t is certainly true that motions to dismiss a plaintiff's complaint under Rule 12(b)(6) on the basis of an affirmative defense will generally face a difficult road. . . . But that does not mean that qualified immunity can never be established at the pleading stage. *To the contrary, every case must be assessed on the specific facts alleged in the complaint.* The Supreme Court has made clear that qualified immunity can be established by the facts alleged in a complaint, *see Wood v. Moss*, [572] U.S.[744], 134 S.Ct. 2056, 188 L.Ed.2d 1039 (2014), and indeed, because qualified immunity protects officials not merely from liability but from litigation, that the issue should be resolved when possible on a motion to dismiss, before the commencement of discovery, to avoid subjecting public officials to time consuming and expensive discovery procedures.

*Garcia v. Does*, 779 F.3d 84, 96–97 (2d Cir. 2015) (emphasis added, citations omitted); *see also, Vincent v. Yelich*, 718 F.3d 157, 167 (2d Cir. 2013) ("Where the *nonexistence* of a constitutional right [or violation] may be discerned *from the face of the complaint*, an official defendant sued in his individual capacity may be granted a dismissal on the ground of qualified immunity pursuant to Rule 12(b)(6)[.]") (emphasis added).

In sum, Leone and Herrick would only be entitled to dismissal of the § 1983 claim on the basis of qualified immunity if the face of Plaintiff's Complaint established their entitlement to the affirmative defense. However, the Court finds that the Complaint does not plead facts establishing the affirmative defense. In that regard, Leone and Herrick contend that they are entitled to qualified immunity because Plaintiff's employment was terminated due to the fact that she made inappropriate comments about a student, and it was not clearly established that firing her under those circumstances would violate her First Amendment right of free speech.[9]

---

[9] *See*, Def. Memo of Law at p. 9 ("Here it was not clearly established that *terminating Plaintiff for inappropriate comments about students* would violate any federal right. At the very least, reasonable school administrators could disagree whether or not this course of action was reasonable.") (emphasis added).

However, the Complaint denies that Plaintiff made inappropriate comments concerning the students during her radio interview, and instead asserts that Leone's characterization of her comments was false and that the reason offered by Defendants for firing her is pretextual.[10] Consequently, the motion to dismiss based on qualified immunity cannot be granted because it rests on disputed facts as opposed to facts that appear on the face of the Complaint. The motion to dismiss the § 1983 First Amendment retaliation claim against Leone and Herrick is therefore denied.

### Doctrine of Governmental Immunity for Discretionary Acts

Defendants next contend that the second cause of action alleging retaliation in violation of the New York State Constitution is barred by the doctrine of governmental immunity for discretionary acts. On this point, Defendants contend that the alleged retaliation was the termination of Plaintiff's employment, which was a discretionary act covered by the doctrine of governmental immunity. Plaintiff agrees that Defendants would be entitled to such immunity if the termination of her employment was a discretionary act but maintains that at this stage of the proceeding it is not clear whether the termination of her employment was a discretionary act or a ministerial act.[11]

New York's doctrine of governmental immunity for discretionary acts "shields public entities from liability for discretionary actions taken during the performance of governmental

---

[10] *See, e.g.*, Complaint [#1] at ¶ 54 ("Leone's accusations were false") and ¶ 65-66 ("[T]he statements she allegedly made leading to her termination were entirely false and misleading. . . . The statements she allegedly made leading to her termination were pretext for her termination.").

[11] *See*, Pl. Memo of Law [#8] at p. 12 ("Judicial efforts to distinguish between discretionary and ministerial acts have produced an array of differing decisions. Accordingly, an analysis of the governmental immunity elements including whether Defendants' conduct amounts to discretionary and ministerial acts is inherently fact specific, and therefore requires the parties to engage in discovery to the [sic] develop the record.").

functions." *Santaiti v. Town of Ramapo*, 162 A.D.3d 921, 928, 80 N.Y.S.3d 288, 295–96 (2d Dept. 2018) (citation and internal quotation marks omitted). Pursuant to this doctrine,

> a state or municipal defendant engaging in a governmental function can avoid liability if it timely raises the defense and proves that the alleged negligent act or omission involved the exercise of discretionary authority. However, the governmental function immunity defense cannot attach unless the municipal defendant establishes that the discretion possessed by its employees was in fact exercised in relation to the conduct on which liability is predicated. Furthermore, the availability of the governmental immunity defense requires that judgment and discretion are exercised in compliance with the municipality's procedures, because the very basis for the value judgment supporting immunity and denying individual recovery becomes irrelevant where the municipality violates its own internal rules and policies and exercises no judgment or discretion.

*Santaiti v. Town of Ramapo*, 162 A.D.3d at 928, 80 N.Y.S.3d at 296 (citation and internal quotation marks omitted).

Similar to the defense of qualified immunity, New York's doctrine of governmental immunity for discretionary acts is an affirmative defense. *See, Santaiti v. Town of Ramapo*, 162 A.D.3d at 928, 80 N.Y.S.3d at 295 ("The doctrine of governmental immunity refers to an affirmative defense on which a defendant bears the burden of proof.") (citation and internal quotation marks omitted). Accordingly, a Rule 12(b)(6) motion on this ground may only be granted if the defendant's entitlement to the affirmative defense is clear from the face of the Complaint. However, that is not usually the case.

For example, in the *Santaiti* decision cited above, the New York State Supreme Court, Appellate Division Second Department, affirmed the trial court's denial of a motion to dismiss based on the doctrine of governmental immunity, stating:

> Here, contrary to the Town's contention, the allegations contained in the complaint do not establish, as a matter of law, that the Town police department was engaged in a discretionary act when it returned the handgun to Groesbeck. Rather, the complaint

> alleges that Groesbeck's possession of the handgun was illegal and that, under the circumstances of this case, the Town police department lacked the legal authority to return it to him.
>
> The Town nevertheless contends that the release of the handgun was discretionary because Groesbeck was a former police officer entitled to possession of the handgun pursuant to 18 USC § 926C. However, that provision sets forth several requirements before a retired law enforcement officer may be considered a "qualified retired law enforcement officer" within the meaning of that statute, including retirement in good standing, service for an aggregate of 10 years or more, and qualification for firearms training for active law enforcement officers in the most recent 12–month period (18 USC § 926C[c]). The question of whether Groesbeck satisfied those requirements is not addressed in this record, and involves issues of fact beyond the scope of a motion to dismiss pursuant to CPLR 3211(a).
>
> Even assuming that the allegedly negligent act of returning the handgun was discretionary in nature, it cannot be said, as a matter of law, that the discretion possessed by the Town was in fact exercised, or that any such exercise of discretion was in compliance with the municipality's procedures. Accordingly, resolution of the Town's argument that it is entitled to governmental immunity—an affirmative defense on which it bears the burden of proof—is not appropriate at this stage of the proceedings.

*Santaiti v. Town of Ramapo*, 162 A.D.3d at 928–29, 80 N.Y.S.3d at 296–97 (citations and internal quotation marks omitted); *see also, Guichard v. Town of Brookhaven*, 26 F. Supp. 3d 219, 229 (E.D.N.Y. 2014) ("The Court finds that Defendants' motion to dismiss on the ground of governmental immunity is premature and better reserved for a motion for summary judgment following discovery, which will shed light on the precise role that Tohill, Incagliato, and other Town employees played in the decision to clean up Plaintiff's property. Moreover, at this stage, the allegations of the Complaint preclude any argument that Defendants' actions were the result of 'the exercise of reasoned judgment which could typically produce different acceptable results' because Plaintiff alleges that Defendants used the Town's nuisance abatement ordinance as a pretext to cause damage to Plaintiff's property and to dump garbage on Plaintiff's property and

assess Plaintiff a fine for the cleanup.") (footnote omitted).

In the instant action, Defendants have not shown that their entitlement to the defense is evident from the Complaint. Rather, they merely assert as follows:

> Here, it is without question that Plaintiff's claims involve the exercise of discretion by Mr. Leone, Ms. Herrick and Mr. Chantra with regard to assigning, training and supervising Bus Attendants, and handling Plaintiff's inappropriate comments made during the radio show. Accordingly, Plaintiff's state law claims must be dismissed under the doctrine of governmental immunity.[12]

This conclusory assertion ignores the fact that the Complaint expressly denies that Plaintiff made inappropriate comments during the radio interview and alleges that such reason was a mere pretext. Moreover, it is not clear from either the Complaint or Defendants' motion what role each of the defendants may have played in the decision to terminate Plaintiff's employment or what District policies may have provided the discretion that was exercised. Accordingly, the motion to dismiss based on the doctrine of governmental immunity is denied.

<u>Intentional Infliction of Emotional Distress</u>

The last issue for consideration is whether Leone, Herrick and Chantra are entitled to dismissal of the IIED claim as a matter of law based on the New York Worker's Compensation Law's exclusivity provision.[13] The parties do not appear to dispute the law that is generally applicable to this issue, which is as follows:

> Workers' Compensation Law provides the exclusive remedy for an employee who seeks damages for injuries which he or she incurs in the course of employment[, though] an

---

[12] Def. Memo of Law [#5-1] at p. 8.
[13] IIED claims are rarely established, since they require "conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Trujillo v. Transperfect Glob., Inc.*, 164 A.D.3d 1161, 1162, 84 N.Y.S.3d 446, 447 (1st Dept. 2018). Despite that, Defendants have not argued that the Complaint fails to plausibly plead facts supporting such a claim, but have instead focused on the alleged procedural bar under the Worker's Compensation Law.

15

exception to the exclusivity provisions of the Workers' Compensation Law exists where the employer commits an intentional or deliberate act directed at causing harm to the injured employee.

*Doe v. State*, 89 A.D.3d 787, 788, 933 N.Y.S.2d 688, 690 (2d Dept. 2011) (citations omitted).

Initially, Defendants' motion based on the Worker's Compensation Law was specifically directed at the third, fourth, fifth and sixth causes of action, but Plaintiff has now withdrawn all of those except the sixth cause of action, which alleges IIED. Regarding that claim, Defendant's moving memorandum of law states in pertinent part:

> Plaintiff's claims of . . . IIED arising from her work-related injury are barred and must be dismissed. . . . Further, to the extent Plaintiff's IIED [claim] is based on the October 4, 2016 incident, it is also barred by the exclusivity of the Workers' Compensation Law. Intentional torts do not fall into the exception unless perpetrated by the employer or at the employer's direction. In this case, Plaintiff does not allege an intentional or deliberate act by District employees that caused her to be injured on October 4, 2016.

Def. Memo of Law [#5-1] at p. 5. Of course, October 4th is the date that Plaintiff was attacked on the school bus by I.T. and J.C., while E.S. filmed the incident. Plaintiff's response to this aspect of Defendant's motion, consisting of a mere three sentences, agrees with Defendants that "workers' compensation exclusivity does not preclude an employee's suit if the employer committed an intentional tort or another person committed such intentional wrong at the employer's direction," but unfortunately does not explain how her IIED claim fits into that exclusion. Indeed, neither the Complaint nor Plaintiff's response to Defendant's motion explains the particular conduct on which the IIED claim is based. Because of that, it is not clear whether Plaintiff is actually attempting to rely on the October 4th incident as a basis for the IIED claim, as Defendants suggest. Because of this lack of clarity, and because Defendant's motion in this regard is based solely on the Worker's Compensation Law exclusivity rule, the Court

cannot presently find as a matter of law that Defendants are entitled to dismissal on that basis. Defendants' motion to dismiss the IIED claim is therefore denied.

CONCLUSION

Defendants' motion to dismiss [#5] is denied. Pursuant to Fed.R.Civ.P. 12(a)(4)(A), Defendants shall file and serve an answer to the Complaint within fourteen days after entry of this Decision and Order.[14]

SO ORDERED.

Dated: Rochester, New York
December 4, 2018

ENTER:

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge

---

[14] *See*, Fed.R.Civ.P. 12(a)(4)(A) ("if the court denies the motion or postpones its disposition until trial, the responsive pleading must be served within 14 days after notice of the court's action").